UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

```
SHEILA SWANSON, Conservator of  )
the Estate and Person of Adam   )
Swanson,                        )
                                )
          Plaintiff             )
                                )
     v.                         )   CASE NO. 2:06 cv 93
                                )
DAVID LEN NIMS and CRETE        )
CARRIER CORP.,                  )
                                )
          Defendants            )
```

OPINION AND ORDER

This matter is before the court on the Renewed Motion for IME [DE 116] filed by the defendants, David Nims and Crete Carrier Corp., on December 14, 2009; the Motion to Compel Discovery [DE 117] filed by the plaintiff, Sheila Swanson, on December 14, 2009; the Motion to Strike Plaintiff's Docket #126 Reply to Defendants [sic] Response to Plaintiff's Motion to Compel Discovery [DE 128] filed by the defendants on February 10, 2010; the Motion to Strike Plaintiff's Docket #127 Supplemental Affidavit in Support of Reply to Defendants [sic] Response to Plaintiff's Motion to Compel Discovery [DE 129] filed by the defendants on February 10, 2010; and the Motion to Strike Defendants' Surreply, Docket #131 [DE 133] filed by the plaintiff on March 10, 2010. For the following reasons, the Motion for IME [DE 116] is GRANTED IN PART, the Motion to Compel Discovery [DE 117] is GRANTED IN

PART and DENIED IN PART, the Motion to Strike Plaintiff's Reply [DE 128] is GRANTED, the Motion to Strike Plaintiff's Supplemental Affidavit [DE 129] is GRANTED, and the Motion to Strike Defendants' Surreply [DE 133] is DENIED AS MOOT.

## Background

This case is a personal injury suit brought by Sheila Swanson as conservator of the estate and on behalf of her son, Adam Swanson, against David Lens Nims, a semi truck operator, and Crete Carrier Corp., Nims' employer. This claim arose from a motor vehicle accident on March 25, 2004, in Hobart, Indiana, involving Adam Swanson and Nims. Swanson was extricated from his vehicle and taken to the hospital where he underwent several surgeries and remained comatose for 10 to 12 weeks. Swanson has been diagnosed with traumatic brain injury, intracranial hemorrhage, left rib fractures, bilateral pulmonary contusions, ventilatory failure, pneumothoraces, occipital condyle fractures, left iliac wing fractures, pneumonia, persistent fever, and grand mal seizure.

Following initial treatment in Indiana, Swanson moved with his family to Tennessee in 2005 and was placed under the care of Dr. Davidson Curwen with the West Tennessee Rehab Group, where Swanson has been treated since June 2005. Dr. Curwen has diagnosed Swanson with spastic quadriparesis with the left side more

affected, having uncontrolled muscle contraction that requires ongoing therapy and the use of a wheelchair.  Dr. Curwen also stated that Swanson is dependant on others for most aspects of his own care and that there is significant impairment of his cognitive functions.  In particular, Swanson has difficulties with both his short and long term memory, as well as with problem-solving, selective attention, and behavioral matters including poor impulse control, outbursts of anger, and inappropriate conversation with limited social skills.  Additionally, Dr. Curwen reported that Swanson has poor insight into his own physical and psychological condition.  Based on these problems, Dr. Curwen has concluded that Swanson will need continued specialized medical care with physical, occupational, and neuropsychological therapy and support.

As discovery in this matter proceeded, several disputes arose between the parties which culminated in a series of motions filed that were denied without prejudice on September 24, 2009, for failure to follow Local Rule 37.1, which requires the parties to confer about any discovery disputes.  Among the denied motions was a motion by Nims and Crete to compel an independent medical examination ("IME") of Adam Swanson and a motion by Swanson to compel discovery.  Following the court's September 24 Order, the parties worked together to attempt to solve many of the outstand-

ing discovery issues.  Despite these efforts, there still were disputes where no agreement could be reached regarding the IME Nims and Crete requested, as well as other information that Swanson was seeking from the defendants.  On December 14, 2009, Nims and Crete filed a renewed Motion to Compel an IME, and Swanson filed a Motion to Compel Discovery of Nims' cellular telephone supplier and information pertaining to Nims' duty status.

The other three motions at issue arise out of the briefing on Swanson's Motion to Compel Discovery.  After the defendants filed their response brief to that motion on January 11, 2010, Swanson submitted the reply brief along with a supplemental affidavit in support of the reply on February 9, 2010.  The next day, February 10, 2010, Nims and Crete filed a Motion to Strike Swanson's reply brief as well as a Motion to Strike the supplemental affidavit on the basis that they had been submitted more than seven days after the response brief in violation of Local Rule 7.1.  Nims and Crete also argue in these two motions that, in the alternative, they should be allowed to submit a sur- reply should the motions to strike not be granted.  For that alternative purpose, Nims and Crete filed a surreply on February 24, 2010, which prompted the final motion under consideration.  On March 10, 2010, Swanson moved to strike the February 24 sur-

reply in its entirety, alleging that the surreply was filed without leave of court.

## Discussion

A party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things." Federal Rule of Civil Procedure 26(b)(1). For discovery purposes, relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Chavez v. DaimlerChrysler Corp., 206 F.R.D. 615, 619 (S.D. Ind. 2002)(quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978)). Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard. Borom v. Town of Merrillville, 2009 WL 1617085, *1 (N.D. Ind. June 8, 2009) (citing Sanyo Laser Prods., Inc. v. Arista Records, Inc., 214 F.R.D. 496, 502 (S.D. Ind. 2003)). See also Adams v. Target, 2001 WL 987853, *1 (S.D. Ind. July 30, 2001)("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the

5

action."); Shapo v. Engle, 2001 WL 629303, *2 (N.D. Ill. May 25, 2001)("Discovery is a search for the truth.").

A court may order a party whose physical or mental status is in controversy to submit to an examination upon a motion for good cause. Federal Rule of Civil Procedure 35(a). The "in controversy" and "good cause" requirements are not simply formalities but necessitate a showing by the movant that the conditions upon which the examination is sought are truly in controversy and that good cause exists for that examination. Schagenhauf v. Holder, 379 U.S. 104, 118, 85 S.Ct. 234, 242-43, 13 L.Ed.2d 152 (1964). There are some situations, however, where the pleadings on their own can fulfill the "in controversy" and "good cause" requirements. Schagenhauf, 379 U.S. at 119, 85 S.Ct. at 243. A plaintiff in a negligence action who asserts mental or physical injury . . . places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." Schagenhauf, 379 U.S. at 119, 85 S.Ct. at 243.

Swanson is within this classification because his claim involves injuries that he sustained in the accident. As a further basis for their motion to compel an IME, Nims and Crete cite to their medical expert, Dr. Richard Katz, who allegedly would need to interview and examine Swanson before making expert

opinions regarding him or constructing a life care plan. It is evident that the matters to be explored in the requested examination are in controversy and that the defendants have good cause to pursue this motion. See, e.g., Rose v. Cahee, 2009 WL 3756985 (E.D. Wis. Nov. 9, 2009)(granting motion to compel an IME where the defendant alleged a mental injury and the court found that her claim placed her mental status in controversy and provided the opposing side good cause for the motion).

Swanson argues that the motion was filed after the close of discovery and therefore should be denied. In making the contention regarding timeliness, Swanson notes that the defendants' previous motion for an IME was filed on the day fact discovery closed, January 15, 2009, without any prior conversation between the parties. Swanson relies on precedent stating that discovery must be completed by the date that discovery closes, not merely initiated. Northern Indiana Public Service Co. v. Colorado Westmoreland, Inc., 112 F.R.D 423, 424 (N.D. Ind. 1986). Although the policy outlined in the Westmoreland holding is practiced in the Northern District of Indiana, this rule is not applicable to the current situation. Following this court's order denying without prejudice defendants' earlier motion for an IME, this court also vacated all previously scheduled deadlines in its September 24, 2009 order. The deadline for filing discov-

ery motions ultimately was set for December 14, 2009, the date on which the current motion requesting an IME was filed. Accordingly, the defendants' motion to compel an IME will not be denied for untimeliness as Swanson suggests.

Swanson would agree to an IME so long as certain conditions are met including: an independent testing site, Sheila Swanson being present for the examination, Dr. Richard Katz allowed to examine the Swanson home, and Dr. Katz not permitted to ask about the accident or Swanson's pre-accident condition. In considering the conditions that Swanson proposes for the IME, the defendants already have agreed to the presence of Sheila Swanson at the examination. This leaves at issue the location and the scope of Dr. Katz's examination.

In regards to the location, the Swansons assert that a clinical, structured setting for any interview is required because of Adam's behavioral issues. However, other interviews have occurred with Adam in his home environment, most notably with Jack Dahlberg, the life-care planner whose report Dr. Katz wishes to contest. Further, Dr. Curwen's opinion that Adam would not be able to give reliable deposition responses does not logically preclude an examination in his home as opposed to at an independent facility. On the other hand, there is an additional associated burden placed on the defendants should the examination

of Adam be at a separate location from the examination of his home.  Although the cost may not be exorbitant, the defendants also would be deprived of any benefit in observing and examining Adam in his home environment as the plaintiff's expert was allowed.  The condition of an independent testing site appears an unnecessary complication, and therefore, the location of the Swanson residence is appropriate for the IME.  During Dr. Katz's examination of Adam at the Swanson residence, he also may examine the home, as already agreed.

The last condition in dispute is to limit the scope of questioning during the examination.  This court already has recognized Adam's impairments and associated limitations that warranted a protective order preventing him from being deposed.  On the same grounds, there is merit in Swanson's concerns about questions that may arise in the course of the IME.  Further, in reviewing Dr. Katz's proposed curriculum for the examination, the limitations requested do not appear to significantly impact the testing and interview Dr. Katz intends to perform.  The limitation that Dr. Katz shall not inquire into the events of the accident or Adam's pre-morbid condition is reasonable under the given circumstances.  The IME will proceed at the Swanson residence, with Sheila Swanson present, and with the scope of the examination limited to exclude questioning of facts regarding the

accident or Adam's pre-morbid condition. Therefore, the Motion for IME [DE 116] is GRANTED IN PART, with these limitations.

The next item under consideration is Swanson's Motion to Compel Discovery [DE 117]. Swanson seeks information regarding Nims' cellular telephone supplier, as well as documents pertaining to Nims' record of duty that Swanson contends are in Crete's possession. A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Federal Rule of Civil Procedure 37(a)(2)-(3). The burden "rests upon the objecting party to show why a particular discovery request is improper." Gregg v. Local 305 IBEW, 2009 WL 1325103, *8 (N.D. Ind. May 13, 2009)(citing Kodish v. Oakbrook Terrace Fire Protection Dist., 235 F.R.D. 447, 449-50 (N.D. Ill. 2006)); McGrath v. Everest Nat. Ins. Co., 2009 WL 1325405, *3 (N.D. Ind. May 13, 2009)(internal citations omitted); Carlson Restaurants Worldwide, Inc. v. Hammond Professional Cleaning Services, 2009 WL 692224, *5 (N.D. Ind. March 12, 2009)(internal citations omitted). The objecting party must show with specificity that the request is improper. Cunningham v. Smithkline Beecham, 255 F.R.D. 474, 478 (N.D. Ind. 2009)(citing Graham v. Casey's General Stores, 206 F.R.D. 253, 254 (S.D. Ind. 2002)). That burden cannot be met by "a reflexive invocation of the same baseless, often abused litany that the

requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." Cunningham, 255 F.R.D. at 478 (citing Burkybile v. Mitsubishi Motors Corp., 2006 WL 2325506, *6 (N.D. Ill. Aug. 2, 2006))(internal quotations and citations omitted). Rather, the court, under its broad discretion, considers "the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." Berning v. UAW Local 2209, 242 F.R.D. 510, 512 (N.D. Ind. 2007)(examining Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. 2002))(internal quotations and citations omitted).

In regards to Nims' cellular phone records and provider, at his deposition Nims disclosed his phone number and carrier at the time of the accident. Swanson pursued this information with a subpoena to T-mobile (the carrier Nims claimed was used) only to discover that there were no records because the phone number had not been in service. Nims then asserted that he had given the wrong number and carrier in his deposition, and provided a different phone number and carrier, this time AT&T, for the cellular phone he had at the time of the accident. Once again,

11

Swanson's attempt to obtain records using this information yielded the same result — AT&T responded that there were no records for that phone number being in service at the time. Nims now contends that he does not have any records or bills that would lead to the discovery of who his cellular phone provider was, and that there is nothing to compel.

This court finds the argument that Nims cannot produce information pertaining to his cellular phone severely lacking. It is unreasonable to believe that Nims, in a "diligent search" through records available as he alleges in his affidavit, was unable to discover who his cellular provider was at the time. Nims' continued evasion of Swanson's request for this information is inexcusable. If Nims is incapable of directly and accurately stating who his provider was, Nims will be required to produce all of his personal financial records in an effort to uncover his cellular telephone supplier at the time of the accident.

Further, this court imposes sanctions upon the defendant for the flagrant failure to disclose the requested information as well as the false and misleading earlier disclosures. "The great operative principle of Rule 37(a)(4) is that the loser pays." Charles Alan Wright & Arthur R. Miller, 8 Federal Practice and Procedure §2288 at 787 (1970). "Fee shifting when the judge must rule on discovery disputes encourages their voluntary resolution

and curtails the ability of litigants to use legal processes to heap detriments on adversaries (or third parties) without regard to the merits of the claims." Rickels v. City of South Bend, Ind., 33 F.3d 785, 787 (7th Cir. 1994). Any loser may avoid payment by showing that his position was substantially justified. Rickels, 33 F.3d at 787. The failure to disclose is sanctionable and properly remedied by an order compelling discovery. Rules 37(a)(2)(B), (a)(3), and (a)(4); Lucas v. GC Services, L.P., 226 F.R.D. 328, 329-30 (N.D. Ind. 2004). Rule 37(a)(4)(A) states that the court shall require sanctions based upon the costs of seeking a motion to compel. Stookey v. Teller Training Distributors, Inc., 9 F.3d 631, 637 (7th Cir. 1993) ("Rule 37(a)(4) clearly allows for an award of the expenses incurred in obtaining an order to compel, including attorney's fees.") Sanctions under Rule 37(a)(4)(A) are appropriate unless the party's nondisclosure was "substantially justified." In addition, Federal Rule 37(c)(1) states that a party who fails to disclose, provides false or misleading disclosure, or refuses to admit information required by Rule 26(a) without "substantial justification" may be sanctioned unless such failure was "harmless." Musser v. Gentiva Health Services, 356 F.3d 751, 755 (7th Cir.2004); Salgado v. General Motors Corp., 150 F.3d 735, 742 (7th Cir. 1998); Engel v. Town of Roseland, 2007 WL 2903196, *6 (N.D. Ind.

Oct. 10, 2007). Thus, Rule 37(a) is a fee-shifting rule, and the loser must pay unless it demonstrates that its position was "substantially justified."

The justification that defendants pursue in their response brief is that the plaintiff's request for information surrounding Nims' phone records was "nothing more than a fishing expedition." However, discovery concerning whether an individual was using a cellular phone at the time of an accident is relevant in a claim alleging negligence, thus the "fishing expedition" argument is not substantial justification for the failure to produce. The defendants are hereby ordered to pay the costs associated with the plaintiff's Motion to Compel Discovery specific to obtaining information regarding Nims' cellular telephone provider. The plaintiff's counsel will submit an affidavit to the court detailing these costs.

The latter part of Swanson's Motion to Compel concerns records from Crete that detail Nims' duty status. Swanson states that although Crete has produced the majority of the documents in regards to this request, Swanson has not received any credit card receipts, company cellular phone records, or toll receipts from the time period of the accident. Crete contends that they have given all records pertaining to Nims' duty status that they have in their possession to Swanson and that they simply do not have

the remaining credit card receipts, phone records, and toll receipts requested. Further, Crete has submitted an affidavit from an individual named Jeffrey L. Schumacher, stating rather shortly that "Crete does not possess any credit card receipts, telephone bills, statements or transponder/toll receipts or records in its possession." The affidavit is poorly worded and does not directly indicate who Schumacher is and in what capacity he functions at Crete, although the defendants' brief designates the affidavit as simply that of Crete Carrier Corporation. Despite this, Crete apparently has attempted to present all materials in its possession related to Nims' duty status. Although it may be that Crete should have retained the requested information, this court cannot force them to deliver documents that it does not have. At trial, the absence of such records will be open for discussion and relevant jury instruction, especially considering that federal safety regulations require such records to be kept. The Motion to Compel Discovery [DE 117] is GRANTED IN PART concerning production of Nims' financial records so that his cellular service records can be subpoenaed and DENIED IN PART as to forcing Crete to produce documents it avers do not exist.

Both motions to strike presented by the defendants rest upon the same basis. Specifically, the defendants contend that both

Swanson's Reply to Defendants' Response to Plaintiff's Supplemental Motion to Compel Discovery [DE 126] and the Affidavit of Sheila Swanson [DE 127], which was offered to supplement Swanson's Reply, were submitted untimely. Local Rule 7.1(a) requires that any reply the moving party wishes to make must be filed within seven days of being served with the adverse party's response. The defendants' response brief was submitted January 11, 2010, and Swanson did not file the reply and supplemental affidavit until February 9, 2010. Although Federal Rule of Civil Procedure 6(d) contemplates an additional three days that could be added to the deadline, there is no question that the deadline to file a reply had passed, and that the plaintiff's reply and supplement were untimely. The Defendants' Motion to Strike Plaintiff's Docket #126 Reply to Defendant's [sic] Response to Plaintiff's Motion to Compel Discovery [DE 128] is therefore GRANTED. Likewise, the Defendants' Motion to Strike Plaintiff's Docket #127 Supplemental Affidavit in Support of Reply to Defendant's [sic] Response to Plaintiff's Motion to Compel Discovery [DE 129] also is GRANTED. Both docket entries, DE 126 and DE 127 are STRICKEN and were not considered by the court.

Finally, Swanson has presented a Motion to Strike [DE 133] the alternative surreply that defendants filed with their Motions to Strike discussed immediately above. Because this court has

granted both of those motions to strike, the defendants' alternative surreply is deemed moot. Consequently, Plaintiff's Motion to Strike Defendants' Surreply, Docket #131 [DE 133] is DENIED AS MOOT.

_____

For the foregoing reasons, the Renewed Motion for IME [DE 116] filed by the defendants, David Nims and Crete Carrier Corp., on December 14, 2009, is GRANTED IN PART; the Motion to Compel Discovery [DE 117] filed by the plaintiff, Sheila Swanson, on December 14, 2009, is GRANTED IN PART and DENIED IN PART; the Motion to Strike Plaintiff's Docket #126 Reply to Defendants [sic] Response to Plaintiff's Motion to Compel Discovery [DE 128] filed by the defendants on February 10, 2010 is GRANTED; the Motion to Strike Plaintiff's Docket #127 Supplemental Affidavit in Support of Reply to Defendants [sic] Response to Plaintiff's Motion to Compel Discovery [DE 129] filed by the defendants on February 10, 2010 is GRANTED; and the Motion to Strike Defendants' Surreply, Docket #131 [DE 133] filed by the plaintiff on March 10, 2010 is DENIED AS MOOT.

ENTERED this 24th day of September, 2010

s/ ANDREW P. RODOVICH
United States Magistrate Judge